**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
::::::::::::::::::::::::::::::::::::::::::::::::::::
**PATRICK ALLEN TRACY,**

                              **Petitioner,**

 **v.**                                                    **9:04-CV-0547**
                                                              **(NPM)**

**WARDEN, Terre Haute Federal**
**Correctional Complex**,

                              **Respondent.**
::::::::::::::::::::::::::::::::::::::::::::::::::::
**APPEARANCES:**                           **OF COUNSEL:**


**FOR THE PETITIONER**:

**PATRICK ALLEN TRACY**
Petitioner, Pro Se
06449-028
Terre Haute Federal Correctional Complex
P.O. Box 33
Terre Haute, IN 47808

**FOR THE RESPONDENT:**

**HON. ANDREW M. CUOMO**               **ALYSON J. GILL, Esq.**
Office of Attorney General                  Assistant Attorney General
New York State Attorney General
120 Broadway
New York, NY 10271

**NEAL P. MCCURN**
**SENIOR UNITED STATES DISTRICT JUDGE**


**MEMORANDUM-DECISION AND ORDER**

**I.      Background**

       The record reflects that on April 8, 2000, Deputy Sheriff Park Freshwater of the Tompkins

County Sheriff's Department was on duty in his patrol car on Route 96B in the Town of Danby,

New York.  See Transcript of Trial of Patrick A. Tracy (8/21/2000) ("Trial Tr.") at 43.  At the time,

visibility was limited and it was snowing heavily.  Id.  At about 8:50 p.m., Deputy Freshwater

noticed a vehicle traveling north toward Ithaca with just one headlight illuminated.  Trial Tr. at 44.

The deputy also noticed that the driver's view through the car's windows was obstructed by snow.

Id.  Deputy Freshwater stopped the vehicle, approached the driver, and asked him for his license and

registration.  Trial Tr. at 44-46.  The driver, who was identified at trial as petitioner, pro se Patrick

A. Tracy (Trial Tr. at 54), declared at the time that he did not have his driver's license with him.

Trial Tr. at 46.  Deputy Freshwater then asked Tracy if the car was registered to him, and Tracy said

that it was.  Id.  Deputy Freshwater instructed Tracy to clean off the windows of the car while the

license plates were checked by the deputy.  Trial Tr. at 46-47.  When Deputy Freshwater learned

that the registered owner of the car was a female, he returned to the car and asked Tracy if the car

was registered to his mother.  Trial Tr. at 47-48.  Tracy said that it was, and identified himself as

Seth Ruggles.  Trial Tr. at 48-49.  When Deputy Freshwater asked Tracy for his date of birth, he

hesitated and became silent.  Trial Tr. at  49.  When the deputy again asked Tracy for his birth date,

he admitted that he had lied, that the name he had given to the deputy was that of his roommate, and

that he did not have a license.  Trial Tr. at 49.  The deputy assured Tracy that he was not in "big

trouble," and that he would be issued two traffic tickets, one for the broken headlight and the other

for unlicenced operation of a motor vehicle, but that Tracy still needed to provide the deputy with

Tracy's true name.  Trial Tr. at 49-50.  Petitioner then volunteered that his name was Jeff A. Kerns.

Trial Tr. at 50.  When Deputy Freshwater again asked for his date of birth, Tracy hesitated and

became silent.  Trial Tr. at 51.  He then began fidgeting in his seat and looking at the keys in the

ignition.  Trial Tr. at 51-52.  The deputy then began to suspect that Tracy might be a "wanted"

person, and accordingly directed him to step out of the car.  Trial Tr. at 51-52.  Soon after Tracy

exited the vehicle, he attempted to run away.  Trial Tr. at 54.  Deputy Freshwater grabbed him and

the two engaged in a struggle which ended when the deputy sprayed Tracy in the face with pepper spray. Trial Tr. at 54-66. Deputy Sheriff Scott O'Dell soon thereafter arrived at the scene, and accompanied Tracy in an ambulance to the Cayuga Medical Center. Trial Tr. at 144-47.

Nurse Randa Best was on duty at the Cayuga Medical Center when Tracy arrived at the hospital. During the course of treating him, she cut his pants and, as she was removing them from his body, two baggies dropped from his groin area. Trial Tr. at 148, 206-07. One baggy contained a green leafy substance which appeared to be marijuana, while the other baggy contained a piece of white paper. Trial Tr. at 149. Deputy Sheriff O'Dell secured both items as potential evidence.

The record also reflects that Undersheriff Randy Haus was at the hospital while Tracy was being treated, and that he overhead Tracy utter spontaneous statements while in the examining room. Specifically, Undersheriff Haus recalled Tracy saying: "Hey, you guys, I'm sorry for being such a fucking asshole," which was soon followed by: "I'm sorry. I just got scared." Trial Tr. at 213. Around that same time, Undersheriff Haus heard Tracy make the following statements: i) "I'm sorry. I didn't hit the officer. I was just trying to get away from him;" (id.) ii) when another deputy walked into the room, Tracy asked him, "Are you the Deputy who stopped me?" When the deputy answered no, petitioner said, "If you were, I was going to apologize." See Trial Tr. at 213-14.

Senior Investigator Mark Dresser of the Tompkins County Sheriff's Department also assisted law enforcement agents in the criminal investigation. He obtained a search warrant for Tracy's car and, after executing that warrant, discovered clear plastic baggies containing what appeared to be marijuana in Tracy's backpack. Trial Tr. at 175-76.

The substances law enforcement agents had seized in conjunction with the criminal

investigation were subjected to chemical testing by John Pierce.  Pierce testified at trial that the substances seized by law enforcement agents relating to Tracy included 64.29 grams (over 2 ounces) of marijuana and 4.70 milligrams of lysergic acid diethylamide ("LSD"), which was contained on the piece of paper that had fallen from Tracy's person while he was in the hospital.  Trial Tr. at 246-53.

On April 11, 2000, Investigator Dresser learned from fingerprint records the true identity of Tracy.  Trial Tr. at 181-83.  Investigator Dresser also discovered that Tracy was the subject of an outstanding federal arrest warrant.  Trial Tr. at 183-84.

As a result of the foregoing, on June 16, 2000, a Tompkins County Grand Jury returned a five count (superceding) indictment against Tracy.  In that accusatory instrument, he was charged with one count of assault in the second degree, resisting arrest, criminal possession of a controlled substance in the fourth degree, criminal possession of marijuana violation in the fourth degree and second degree criminal impersonation  See Superceding Indictment, Counts One through Five.

Tracy's jury trial on the above charges commenced in Tompkins County Court on August 21, 2000 with County Court Judge M. John Sherman presiding.  At that trial, Seth Ruggles testified that he was the roommate of Tracy at the relevant time, identified the backpack in which Investigator Dresser had found the marijuana as belonging to Tracy, and declared that he did not allow Tracy to use Ruggles' car or name on the evening of April 8, 2000.  Trial Tr. at 168-69.  At the conclusion of that trial, the jury acquitted Tracy of the second degree assault charge, but convicted him of the remaining charges.  Trial Tr. at 383-84.

On November 28, 2000, Judge Sherman heard oral argument from the parties on defense counsel's motion under New York's Criminal Procedure Law ("CPL"), §§ 330.30 and 440.10, for a

4

new trial based upon his claim of newly discovered evidence.

In that application, defense counsel argued that he did not receive a copy of the cassette recording made of a preliminary hearing involving Tracy that was held in the Groton Town Court until after Tracy's trial had been completed. See Transcript of Hearing (11/28/00) ("November, 2000 Hearing") at 2.[1] Counsel noted that at that hearing, Deputy Freshwater claimed that he had sustained an injury to both his head and back eighteen years earlier, but that the deputy did not refer to that injury when he testified at trial as to the medical treatment he had sought in the past for injuries he had sustained to his back and neck. November, 2000 Hearing at 2-3; see also Trial Tr. at 79-80. Counsel argued that because he was not provided with a copy of that tape until after the trial had been completed, he was unable to effectively impeach Deputy Freshwater at trial. November, 2000 Hearing at 3-5. In opposing the motion, the prosecutor explained that it had contacted the clerk of the Groton Town Court and was informed that the court did not have the audiotape, and that if one had been made, copies of the tape would have been provided to defense counsel and the prosecutor at the end of the hearing. See Dkt. No. 21-2 at 11. The prosecutor further explained that on October 26, 2000, after the trial had been completed, he received a telephone call from the court clerk and was advised that the tape had been located. Id. at 12. The District Attorney advised that clerk to promptly send a copy of the tape to defense counsel. Id.

Judge Sherman denied Tracy's CPL application and scheduled Tracy's sentencing for the following month. See November, 2000 Hearing at 9-10. On December 1, 2000, the County Court

---

[1] Counsel had requested the audiotape of the preliminary hearing prior to trial, but the prosecution declared that it did not have the tape and did not know of its whereabouts. Defense counsel also argued in his application that he was informed by the Groton Town Court that it did not have copy of the tape. November, 2000 Hearing at 2-3.

sentenced Tracy to an indeterminate period of incarceration of two to six years on the fourth degree

criminal possession of a controlled substance conviction (which related to the LSD found on Tracy's

person), and to lesser, concurrent terms on the remaining convictions.  See Transcript of Sentencing

of Patrick Tracy (12/1/2000) at 12.

In April of 2002, appellate counsel filed a brief on Tracy's behalf in the New York State

Supreme Court Appellate Division, Third Department, in which he raised seven grounds for relief.

Counsel specifically argued that:  i) the trial court erred in denying Tracy's motion to suppress the

drugs seized at the hospital; ii) the search warrant was improperly issued because it was based in

part on statements made by Tracy after he was taken into custody but before he was advised of his

Miranda[2] rights; iii) the County Court erred in admitting evidence of petitioner's federal arrest

warrant; iv) the trial court wrongfully permitted Pierce to testify because the prosecution had failed

to disclose a report prepared by him until hours before he was to testify; v) the County Court erred

in failing to dismiss the criminal impersonation count; vi) Tracy was denied the effective assistance

of trial counsel; and vii) the trial court erred in denying Tracy's CPL § 330.30 motion.  See

Appellate Brief on Appeal ("App. Br.").  In May of 2002, the Tompkins County District Attorney

filed a brief in opposition to Tracy's appeal.

While his appeal was pending, Tracy filed a motion to vacate the judgment of conviction in

Tompkins County Court.  See Dkt. No. 21, Exh G ("CPL Motion").  In that application, Tracy

claimed that:  i) the conviction was procured by "duress, misrepresentation or fraud" because he was

not provided a copy of the audio tape made of preliminary hearing until after trial; ii) the prosecutor

belatedly disclosed Pierce's laboratory report; iii) Deputy Freshwater's testimony at trial, as well as

---

[2]        Miranda v. Arizona, 384 U.S. 436 (1966).

that of Undersheriff Haus, was false and perjurious;  iv) the justice who issued the search warrant

was not neutral because he was the same individual who stopped his car and assisted Deputy

Freshwater on the evening of April 8, 2000; v) the bags of drugs that fell from his pants at the

hospital should have been suppressed; vi) his statements at the hospital were made without the

benefit of <u>Miranda</u> warnings and while Tracy was legally intoxicated due to the pain medication that

had been administered to him; vii) prosecution witness Ruggles had an extensive criminal history

that was never disclosed to the defense by the prosecutor; viii) the justice who presided over the

preliminary hearing was not neutral because he collected a pension from his former employer, the

Tompkins County Sheriff's Department; ix) Tracy was not arrested until after he was released from

the hospital on April 14, 2000; x) the preliminary hearing audio tape that was not timely provided to

Tracy constituted newly discovered evidence which entitled him to a new trial; and xi) his trial

attorney provided ineffective assistance by failing to:  (a) contest the search warrant; (b) serve a

written discovery demand on the People; (c) adequately investigate the materials provided to him by

the prosecution; (d) seek independent testing of the substances seized by law enforcement agents;

(e) renew an objection regarding the length of the adjournment given to the defense to review the

belatedly disclosed lab report; (f) file Tracy's <u>pro</u> <u>se</u> motions; (g) properly cross-examine

prosecution witnesses; (h) conduct pretrial interviews and depositions of potential witnesses; (i)

impeach Deputy Sheriff O'Dell with his prior, inconsistent testimony; (j) contest the chain of

custody relating to the drugs seized at the hospital; and (k) move for a new trial in light of the fact

that the LSD which Tracy was convicted of possessing was destroyed by the prosecution.  <u>See</u> CPL

Motion.

On November 14, 2002, the Third Department affirmed Tracy's conviction and sentence.

7

See People v. Tracy, 299 A.D.2d 659 (3rd Dept. 2002).  The Court of Appeals thereafter denied his application for leave to appeal the Appellate Division's decision.  People v. Tracy, 99 N.Y.2d 629 (2003).

In his Decision and Order dated November 21, 2002, Judge Sherman denied Tracy's CPL Motion ("November, 2002 Order").

In a submission dated January 22, 2004, petitioner filed an application in the Third Department seeking a writ of error coram nobis.  In that request, Tracy claimed that his appellate counsel was ineffective because he failed to:  a) adequately develop the appellate record; b) assert several theories in support of an appellate claim that Tracy received the ineffective assistance of trial counsel; c) argue that the prosecutor improperly withheld Brady[3] materials from the defense; d) assert that the prosecution elicited perjurious testimony at trial; e) claim that the prosecutor's failure to preserve the LSD that formed the basis of the felony conviction violated Tracy's due process rights; f) contend that Tracy's Miranda rights were violated; and g) claim that the police used a "false" arrest date for Tracy which affected the admissibility of the evidence seized from Tracy at the hospital.  By order dated March 18, 2004, the Third Department denied Tracy's motion.  See People v. Tracy, No. 15173 (3d Dept. Mar. 18, 2004).

### B.  This Action

Tracy filed a pro se petition in this District seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 13, 2002.  In that application, Tracy asserts the following claims:  1) he received the ineffective assistance of appellate counsel; (2) he received the ineffective assistance of trial counsel; (3) the prosecutor committed Brady violations at trial; (4) the incriminating statements

---

[3]      Brady v. Maryland, 373 U.S. 83 (1963).

he made while at the hospital were made after he requested the presence of an attorney; (5) his rights to due process were violated when the County Court: (a) allowed the jury to hear evidence of his federal arrest warrant, (b) permitted Pierce to testify about his chemical analysis of the substances seized from Tracy, (c) failed to dismiss the criminal impersonation charge, and (d) denied his motion to set aside the verdict; and (6) the prosecutor suborned perjurious testimony at trial and committed Rosario[4] violations. See Petition (Dkt. No. 1), Grounds One through Six. Petitioner also submitted a memorandum of law in support of his petition that is over eighty pages in length. See Dkt. No. 14 ("Supporting Mem.").

After reviewing the petition, Tracy's in forma pauperis application and the file in this matter, Magistrate Judge David R. Homer issued an order which directed the respondent to file a response to the petition. Dkt. No. 3. The Office of the Attorney General for the State of New York, acting on respondent's behalf, subsequently filed a response in opposition to Tracy's application. Dkt. No. 21. Respondent has also filed a memorandum of law requesting dismissal of the petition. Dkt. No. 23 ("Resp. Mem."). Petitioner thereafter filed a "traverse," Dkt. No. 24 ("Traverse"), as well as supplemental letter-briefs (Dkt. Nos. 30-32), in further support of his habeas application.

On January 5, 2006, this matter was re-assigned to this Court for disposition pursuant to the order of then-Chief Judge Frederick J. Scullin, Jr. Dkt. No. 33.

## II.   Discussion

### A.   Procedurally Barred Claims

The Court initially considers Tracy's second ground for relief, which asserts various claims that respondent argues petitioner is procedurally barred from asserting herein. See Petition, Ground

---

[4]      People v. Rosario, 9 N.Y.2d 286 (1961).

9

Two; Resp. Mem. at 18.  In that ground, Tracy offers numerous theories in support of his assertion

that his trial counsel rendered ineffective assistance.  Specifically, he argues that his trial counsel

wrongfully failed to:  i) serve a written discovery demand on the District Attorney; ii) interview any

witnesses or adequately investigate the case against Tracy; iii) retain an expert witness to testify

about, and conduct independent testing on, the substances Tracy was accused of criminally

possessing; iv) adequately argue the applications that sought to suppress that physical evidence and

which challenged the validity of the search warrant; v) object to:  (a) the prosecution's alleged

misstatements regarding the date and place of Tracy's arrest; (b) the pre-indictment destruction of

the paper which was alleged to contain the LSD that Tracy was convicted of possessing; (c) the

prosecution's belated disclosure of <u>Brady</u> material; and (d) misconduct on the part of the

prosecution.  <u>See</u> Petition, Ground Two.

Tracy asserted these claims challenging the effectiveness of his counsel in petitioner's CPL

Motion.  <u>See</u> CPL Motion, "Sixth Cause of Action."  Judge Sherman denied those claims pursuant

to CPL § 440.10(2).  <u>See</u> November, 2002 Order at 2, 3.  That provision of the CPL provides, in

relevant part:

> [T]he court must deny a motion to vacate a judgment when:
>
>> (a) The ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue;  or
>>
>> (b) The judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal;  or
>>
>> (c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the

10

ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him;

(d) The ground or issue raised relates solely to the validity of the sentence and not to the validity of the conviction.

Because Tracy's CPL Motion plainly challenged the propriety of his conviction, Judge Sherman could not have been referring to CPL § 440.10(2)(d) – which only concerns challenges to sentences – in his November, 2002 Order.   Thus, it is apparent that the County Court denied Tracy's claims alleging ineffective assistance of counsel pursuant to CPL § 440.10(2)(a), (b) and/or (c).[5]

The denial of claims under subdivisions of (a), (b) and (c) of CPL § 440.10(2) are procedural denials of such claims.  See Fernandez v. Artuz, 402 F.3d 111, 115 n.4 (2d Cir. 2005) (denial of a claim under CPL § 440.10(2)(a) is a procedural denial of a claim); Flores v. Demskie 215 F.3d 293 (2d Cir.) (trial court's denial of claim pursuant to CPL § 440.10(2)(b) was a finding that the claim was "procedurally barred"); Artuz v. Bennett, 531 U.S. 4, 7 (2000) (denial of a claim under CPL § 440.10(2)(c) was an adequate and independent state procedural ground barring federal habeas review of such claim).

As respondent correctly notes in opposing this aspect of Tracy's petition, a federal district court is precluded from reviewing a habeas claim if the state courts' rejection of that same claim rested on a state procedural bar unless the petitioner demonstrates both good cause for and actual

---

[5]        This finding is buttressed by the fact that the County Court referred to the salient provisions of CPL § 440.10(2)(a), (b) and (c) in its order denying the CPL Motion.  See November, 2002 Order at 2.  Although the County Court also denied Tracy's CPL Motion pursuant to CPL § 440.30(2), see November, 2002 Order at 3, a denial of a claim under that provision of the CPL is not properly considered a procedural denial of a claim.  See Smart v. Scully, 787 F.2d 816, 819-21 (2d Cir. 1986).

prejudice resulting from the noncompliance with the state's procedural rule.  See Resp. Mem. at 18-19; see generally Fama v. Commissioner of Correctional Services, 235 F.3d 804, 809 (2d Cir. 2000); Livingston v. Herbert, No. 00-CV-1698, 2002 WL 59383, at *2 (N.D.N.Y. Jan. 3, 2002) (Homer, M.J.), adopted, No. 00-CV-1698, docket no. 20 (N.D.N.Y. Jan. 24, 2002) (Kahn, J.), appeal dismissed, No. 02-2083, slip op. at 1 (2d Cir. Aug. 28, 2002) (unpublished).  Additionally, review of procedurally defaulted claims is available where the petitioner demonstrates that a fundamental miscarriage of justice would occur absent federal court review.[6]  Dixon, 293 F.3d at 80; Morales v. Greiner, No. CV-98-6284, 2005 WL 1009545, at *8 (E.D.N.Y. May 2, 2005).

   In his Traverse, Tracy acknowledges that the County Court found the majority of his claims relating to trial counsel to be procedurally barred.  See Traverse at 5.  He does not, however, attempt to establish cause for this default; he instead merely refers this Court to his memorandum of law in support of his claims against trial counsel as support for his assertion that he is entitled to federal habeas intervention.  See Traverse at 10-11.  However, since Tracy has not alleged – must less established – cause for his procedural default on these theories,[7] this Court need not decide whether he suffered resulting prejudice, because federal habeas relief is unavailable as to procedurally barred claims under this limited exception permitting review of procedurally forfeited claims unless **both** cause and prejudice is demonstrated.  Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir.1985); D'Alessandro v. Fischer, No. 01 CIV. 2551, 2005 WL 3159674, at *9 n.10 (S.D.N.Y. Nov. 28,

---

   [6]      A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002).

   [7]      The petitioner bears the burden of demonstrating cause for his procedural default and resulting prejudice.  See Simpson v. Portuondo,  01CIV.8744, 2002 WL 31045862, at *5 (S.D.N.Y. June 4, 2002).

2005) ("[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing Stepney); Moore v. Greiner, No. 02 CIV.6122, 2005 WL 2665667, at *12 (S.D.N.Y. Oct. 19, 2005) (citing Stepney); Lutes v. Ricks, No. 02-CV-1043, 2005 WL 2180467, at *9 (N.D.N.Y. Sept. 9, 2005) (McAvoy, S.J.) (citing Stepney) (other citation omitted); Pou v. Keane, 977 F.Supp. 577, 581 (N.D.N.Y.1997) (Kahn, J.).

This Court's finding that Tracy has failed to establish cause for his default does not necessarily preclude this Court from considering his procedurally forfeited claims, however, because, as noted above, a federal court may nonetheless properly invoke habeas review as to such claims where the court is convinced of the petitioner's actual innocence.  On this question, however, the Second Circuit has noted that:

> [T]he fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "the extraordinary cases." Schlup v. Delo, 513 U.S. 298, 321-22 (1995); ....  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 ... (1998).  "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" Id. (citing Schlup, 513 U.S. [at] 327-28 ... (some internal citations and quotation marks omitted).

Sweet v. Bennett, 353 F.3d 135, 142 (2d Cir. 2003); see also D'Alessandro, 2005 WL 3159674, at *8; Marengo v. Conway, 342 F.Supp.2d 222, 228 (S.D.N.Y. 2004).

Tracy has not demonstrated that he is actually innocent of any of the charges of which he was convicted.

Considering first the felony conviction relating to the LSD Tracy was found to have criminally possessed, the Court notes that although he claims that "he possessed no LSD as the State claims," see Traverse at 14, that claim is based upon his unsubstantiated allegation that the testing

13

performed by Pierce on the paper that was in Tracy's possession was critically flawed.

Unfortunately for Tracy, federal district courts cannot grant habeas relief based upon

unsubstantiated surmise, opinion or speculation.  Wood v. Bartholomew, 516 U.S. 1, 8 (1995)

(federal courts may not grant "habeas relief on the basis of little more than speculation with slight

support"); Youngblood v. Conway, 426 F.Supp.2d 107, 125 (W.D.N.Y. 2006) (because petitioner's

claim was "based on nothing more than mere speculation, it cannot provide a basis for habeas

relief"); see also Williams v. Burge, No. 02-CV-0695, 2005 WL 2179423, at *16 (N.D.N.Y. Aug.

15, 2005) (Peebles, M.J.), adopted Williams v. Burge, No. 02-CV-0695, Dkt. No. 35 (N.D.N.Y.

Dec. 7, 2005) (Hurd, D.J.); Jones v. O'Keefe, No. 99 Civ.12279, 2000 WL 1290595, at *5

(S.D.N.Y. Sept. 12, 2000) (citations omitted).

    As to the criminal impersonation charge, Tracy notes that Deputy Freshwater testified that

Tracy identified himself to the officer as "Seth A. Ruggles," Trial Tr. at 49, and that Ruggles

testified at trial that his actual name is "Seth Edwards Ruggles."  Trial Tr. at 167.  Since a

conviction on that charge requires proof that he impersonated another individual, and not merely a

fictional person, see N.Y. Penal L. § 190.25(1), Tracy argues that he is actually innocent of that

conviction.  E.g. Supporting Mem. at 58-60.

    To establish the criminal impersonation charge, the prosecutor was required to prove that

Tracy, inter alia, "identified himself to a police officer using the identit[y] of [an]other individual[]."

Trial Tr. at 355.  Deputy Freshwater testified that some time after Tracy identified himself as Seth

Ruggles to the deputy, Tracy admitted to the deputy that Ruggles was actually the name of Tracy's

roommate.  Trial Tr. at 49.  Based upon the evidence adduced at trial, the Court finds that the name

provided by the petitioner to the officer, coupled with the fact that Tracy eventually informed the

14

officer that he had provided Deputy Freshwater with the name of petitioner's roommate, who was not a fictitious person, this Court finds that the jury therefore could have reasonably concluded that Tracy's conduct amounted to criminal impersonation.[8]  That determination precludes this Court from finding that Tracy is actually innocent of that conviction.  Since he has similarly not demonstrated his actual innocence of either the resisting arrest or the criminal possession charge relating to the marijuana found on his person, he has failed to make a credible claim of actual innocence in this matter.  Therefore, petitioner may not now seek safe harbor from the denial of his ineffective assistance of trial counsel claims based upon a claim of actual innocence.

In light of the foregoing, this Court denies Tracy's second ground for relief as procedurally forfeited.

### B.    Remaining Claims

#### 1.    Standard of Review

The April, 1996 enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.

In discussing this deferential standard, the Second Circuit noted in <u>Rodriguez v. Miller</u>, 439 F.3d 68 (2d Cir. 2006) that:

> a federal court may award habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication resulted in an outcome that: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) was "based on an unreasonable determination of the facts in light of the

---

[8]      Juries are permitted to "draw reasonable inferences from basic facts to ultimate facts."  <u>Jackson</u>, 443 U.S. at 319.

evidence presented in the State court proceeding."

Rodriguez, 439 F.3d at 73 (quoting 28 U.S.C. § 2254(d)); see also DeBerry v. Portuondo, 403 F.3d

57, 66 (2d Cir. 2005); Miranda v. Bennett, 322 F.3d 171, 177-78 (2d Cir. 2003); Boyette v. LeFevre,

246 F.3d 76, 88 (2d Cir. 2001).  In providing guidance concerning application of this test, the

Second Circuit has noted that:

> [A] state court's decision is "contrary to" clearly established federal
> law if it contradicts Supreme Court precedent on the application of a
> legal rule, or addresses a set of facts "materially indistinguishable"
> from a Supreme Court decision but nevertheless comes to a different
> conclusion than the Court did. [Williams v. Taylor, 529 U.S. 362,] at
> 405-06 [2000]; Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001)....
> [A] state court's decision is an "unreasonable application of" clearly
> established federal law if the state court "identifies the correct
> governing legal principle from [the Supreme] Court's decisions but
> unreasonably applies that principle to the facts" of the case before it.
> Williams, 529 U.S. at 413.

Thibodeau v. Portuondo, 486 F.3d 61, 65 (2d Cir. 2007); see also Williams v. Artuz, 237 F.3d 147,

152 (2d Cir. 2001) (citing Francis S. v. Stone, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining

whether the state court's determination was merely incorrect or erroneous, but instead whether such

determination was "objectively unreasonable."  Williams, 529 U.S. at 409; see also Sellan v.

Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).  Objectively unreasonable in this context means

"'some increment of incorrectness beyond error is required'" in order to grant a federal habeas

application.  Earley v. Murray, 451 F.3d 71, 74 (2d Cir. 2006) (quoting Francis S., 221 F.3d at 111).

Additionally, under the AEDPA, "a determination of a factual issue made by a State court

shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see also

16

DeBerry, 403 F.3d at 66; Boyette, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

### 2.    Substance of Tracy's Claims

### A.    Ineffective Assistance of Appellate Counsel

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const., Amend. VI.  This Amendment has been interpreted to require that indigents be provided with assigned counsel for their first appeal as of right.  Douglas v. California, 372 U.S. 353, 358 (1963).  Thus, an individual is entitled to the effective assistance of appellate counsel.  McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).  The proper standard for evaluating a claim that appellate counsel was ineffective is the test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See Smith v. Robbins, 528 U.S. 259, 287-89 (2000).  In Strickland, the Supreme Court determined that to establish an ineffective assistance of counsel claim, a habeas petitioner must show both:  i) that counsel's representation fell below an objective standard of reasonableness, measured in the light of the prevailing professional norms; and ii) resulting prejudice that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 688-90; see also Wiggins v. Smith, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in Strickland).

Tracy asserts numerous theories in support of his claim that his claim that appellate counsel rendered ineffective assistance.  He argues that such counsel:  i) failed to adequately develop the appellate record; ii) neglected to assert numerous theories in support of counsel's appellate claim alleging ineffective assistance of trial counsel; iii) failed to assert Brady and Rosario claims on

appeal; iv) did not argue that the prosecution suborned perjurious testimony; v) failed to claim that the destruction of evidence entitled Tracy to a new trial; and vi) did not assert any <u>Miranda</u> claims on appeal.  <u>See</u> Supporting Mem. at 38-55; <u>see</u> <u>also</u> <u>Coram</u> <u>Nobis</u> Application (1/13/04).

The Third Department found Tracy's claims challenging the performance of his appellate counsel to be without merit.  <u>See</u> <u>Tracy</u>, No. 15173 at 1.  This Court must therefore ascertain whether that determination of the Appellate Division is either contrary to, or represents an unreasonable application of, the above-referenced Supreme Court precedent.

Tracy initially argues that his appellate counsel failed to "fully develop the record." Supporting Mem. at 37-38.  In support of this assertion, he argues that counsel wrongfully failed to argue that Tracy had rejected a plea proposal that would have resulted in a sentence of "time served," rather than the indeterminate sentence of up to six years imprisonment to which he was ultimately sentenced following his trial.  Supporting Mem. at 38-39.  However, that information was plainly part of the record.  <u>See</u> Transcript of Pretrial Proceeding (9/26/00) at 3-7.  Thus, it is unclear to this Court how the record was not adequately developed regarding this issue.  Moreover, the petitioner has not established how any pre-trial plea negotiations between Tracy and the prosecutor were relevant to any appellate claims that counsel should have raised on appeal.

Tracy also faults counsel for failing to develop the record to demonstrate his claim that the Town Justice who issued the search warrant was the same individual who happened to be driving on Route 96B the evening of April 8, 2000 when the incident between Deputy Freshwater and Tracy was transpiring.  Supporting Mem. at 39.  However, Tracy has not pointed to any document in the record which establishes this claim, and this argument appears to be inconsistent with Deputy Freshwater's sworn trial testimony concerning the individuals who arrived at the scene of the

incident.  E.g., Trial Tr. at 71-74.  The petitioner bears the burden of proof in a habeas corpus

proceeding.  See Whitaker v. Meachum, 123 F.3d 714, 716 (2d Cir. 1997) (citing Walker v.

Johnston, 312 U.S. 275, 286 (1941) (petitioner has the burden of "sustaining his allegations by a

preponderance of evidence" on collateral review) (other citations omitted); Lovacco v. Kelly, No. 99

CV 3094, 2005 WL 2482518, at *3 (S.D.N.Y. Oct. 7, 2005) (citation omitted); Nunez v. Miller, No.

00 CIV 0966, 2001 WL 1773731, at *8 (E.D.N.Y. July 12, 2001) (citations omitted).  Tracy's failure

to provide evidence in support of this claim represents a failure to shoulder his burden of proof as to

this theory.

Tracy also asserts that appellate counsel failed to adequately develop the appellate record

because he neglected to provide the Third Department with documents petitioner claims establishes

that he was never placed under arrest until after he was discharged from the hospital.  See

Supporting Mem. at 40-41 (citing Coram Nobis Application, Exhs. M-24, M-25).  This argument,

however, appears to overlook the well-established rule that appeals are "limited to the trial record."

People v. Gomez, 255 A.D.2d 246 (1st Dept. 1998), leave denied, 93 N.Y.2d 873 (1999); see also

Leis v. Finkelstein, 205 A.D.2d 738, 739 (2d Dept. 1994) ("It is well established that review [by an

appellate court] is limited to the record made before [the trial court]") (internal quotation marks and

citations omitted).  There is no evidence that either of the two documents upon which Tracy now

relies in support of his claim that he was not arrested until after he was discharged from the hospital

were utilized at trial, or were otherwise part of the trial record.[9]  Thus, appellate counsel was not

---

[9]      The transcript of Tracy's trial establishes that one of these two documents, an arrest
report prepared by Investigator Dresser (Coram Nobis Application, Exh. M-25) was clearly not
utilized at trial; it was not a marked exhibit at that proceeding.  Although the record is unclear as
to whether the parties ever referred at trial to the other exhibit cited by Tracy in support of this
claim – a supplemental report apparently prepared by Investigator Dresser on April 14, 2000

ineffective in failing to refer to those documents on appeal.  E.g. 10A Carmody-Wait 2d, New York

Practice, § 70:205 & n.5 (documents will not be considered part of the record even if marked as an

exhibit unless document was actually offered in evidence).[10]

Petitioner additionally contends that appellate counsel neglected to assert numerous theories

in support of an ineffective assistance of trial counsel claim.  See Supporting Mem. at 38-39.

To prevail on this theory, Tracy must rebut the "strong presumption" that his appellate

counsel's performance "fell within the wide range of reasonable professional assistance."  Middleton

v. Ercole, No. 07-CV-2810, 2007 WL 4264578, at *13 (E.D.N.Y. Dec. 3, 2007) (citing Strickland).

Appellate counsel argued that Tracy's trial counsel rendered ineffective assistance by failing to:  i)

contest the search warrant; ii) file a written discovery demand; and iii) adequately cross examine

Pierce, the Government's expert witness.  See App. Br. at 10-11.  Petitioner himself has asserted all

three of these theories concerning trial counsel's alleged ineffectiveness in Tracy's pro se petition

seeking federal habeas relief.  See Supporting Mem. at 12-13, 24-25, 29.  That fact casts significant

doubt on his habeas claim that appellate counsel "omitted significant obvious issues while

purs[u]ing issues that were clearly and significantly weaker."  See Amended Motion, Ground One.

Next, although appellate counsel did not, as Tracy correctly argues, assert all of the theories he now

asserts in support of his claim regarding trial counsel's effectiveness, this Court notes that the

"process of winnowing out weaker arguments on appeal and focusing on those more likely to

---

(Coram Nobis Application, Exh. M-24) – it is apparent that such document was never received
into evidence.

[10]     The Court notes that both the June 6, 2000 Indictment, and the June 16, 2000
Superceding Indictment, accuse Tracy of resisting arrest on April 8, 2000 and not April 14, 2000,
after he was released from the hospital.

prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."

Sellan v. Kuhlman, 261 F.3d 303, 317 (2d Cir. 2001) (internal quotation marks and citations

omitted); see also Brown v. Filion, No. 03 CIV. 5391, 2005 WL 1388053, at *16 (S.D.N.Y. June

13, 2005) (citations omitted), adopted, 2005 WL 2159675 (S.D.N.Y. Sept. 6, 2005).  In Douglas v.

Senkowski, No. 94 CV 2796, 1997 WL 714275 (E.D.N.Y. Nov. 13, 1997), the court was similarly

confronted with a habeas claim in which the petitioner argued that his appellate counsel wrongfully

failed to assert additional theories crafted by that petitioner in conjunction with appellate counsel's

argument that the petitioner had received the ineffective assistance of trial counsel.  In denying that

ground for relief, the Douglas court observed:

> appellate counsel was under no obligation to raise every possible
> nonfrivolous argument.  See Jones, 463 U.S. at 754.  Instead,
> appellate counsel chose to concentrate on issues which he determined
> provided Petitioner with the best opportunity to achieve a reversal of
> his conviction.  Id. at 751-52 (recognizing the importance of
> winnowing out arguments on appeal in order to focus on key issues).
> The Court will not second guess appellate counsel's strategic
> decisions. Appellate counsel filed a twenty-two page brief arguing for
> the reversal of Petitioner's conviction on four grounds.  From the
> record, it appears that appellate counsel capably presented those
> nonfrivolous arguments, even though the arguments ultimately failed.

Douglas, 1997 WL 714275, at * 3 (footnote omitted).

In the case sub judice, appellate counsel's brief asserted seven theories in support of the

appeal, including a claim alleging ineffective assistance of counsel.  See App. Br.  The fact that

appellate counsel raised an ineffective assistance of trial counsel claim strongly suggests that

counsel reviewed the performance of trial counsel and chose to assert in his appeal those theories

that appellate counsel believed had the best chance of prevailing.

Since it is apparent to this Court that appellate counsel's strategy was both reasonable and

sound, Tracy's ineffectiveness assistance claim regarding such counsel must fail.  E.g., Gonzalez v.

Duncan, No. 00-CV-1857, 2001 WL 726985, at *6 (E.D.N.Y. June 22, 2001) (denying habeas claim

alleging ineffective assistance of appellate counsel where appellate brief reveals sound appellate

strategy on part of attorney); Davis v. Keane, No. 99 CV 71, 2001 WL 13288, at *6 (E.D.N.Y. Jan.

4, 2001) (same), aff'd, Davis v. Keane, No. 01-2110, 2002 WL 2009559 (2d Cir. Sept. 3, 2002).

   With respect to appellate counsel's failure to assert any Brady claims on appeal, this Court

notes that this argument is rooted in Tracy's claims that:  i) he did not receive the tape made at the

preliminary hearing until after the trial was completed; and ii) Deputy Freshwater's testimony at that

pretrial hearing concerning an injury he sustained to his back and neck years before the incident

involving Tracy was purportedly inconsistent with that deputy's subsequent trial testimony.  See

Supporting Mem. at 42-43.

   Because the prosecutor plainly was not in possession of the tape until after the trial, any

appellate claim that the District Attorney committed either a Brady or Rosario violation by not

disclosing the recording earlier would have necessarily failed.  See People v. Santorelli, 95 N.Y.2d

412, 420-21 (2000) (where prosecutor did not possess reports sought by appellant until after trial,

Brady and Rosario claims were without substance).  Next, the Court notes that the portion of Deputy

Freshwater's testimony that related to his injuries necessarily related to the second degree assault

charge, which required proof that Tracy, with the intent to prevent the deputy from performing a

lawful duty, caused physical injury to him.  See N.Y. Penal Law § 120.05(3).  Since Tracy was

acquitted of that charge, however, see Trial Tr. at 383, he cannot establish that he was prejudiced by

counsel's failure to raise that appellate claim.

   Finally, Tracy faults appellate counsel for failing to argue that the District Attorney suborned

perjurious testimony.  <u>See</u> Supporting Mem. at 42-48.  However, this claim fails for several reasons.

The Court initially notes that Tracy has not established that the testimony of either of the prosecution witnesses upon which this aspect of his petition is based committed perjury.  The record reflects that during the preliminary hearing, Deputy Freshwater was asked "have you ever been injured in the back and neck before," to which the deputy declared "yes," and proceeded to describe an injury he had sustained when he was eighteen years old.  <u>See</u> Appellant's Appendix at 28.  At trial, that witness was asked what type of treatment he had sought for the injuries he claimed were inflicted on him by Tracy, and the deputy noted that he had gone to Dr. Michael Kennedy, a chiropractor, for "a couple of years on and off" for ailments.  Trial Tr. at 79.  Tracy argues that by failing to refer to the prior incident that resulted in an injury to Deputy Freshwater's back, that witness committed perjury.  Supporting Mem. at 42-43.  However, this claim appears to ignore the fact that on cross-examination, when defense counsel asked that witness if he had received treatment for his neck and lower back in the past, the deputy responded "I have had treatment and I don't know the dates, but I have had treatment for both stiffness in my upper neck and my lower back, yes, that' s correct."  Trial Tr. at 113.  While perhaps the deputy's trial testimony was not as precise as it was during the preliminary hearing relating to this issue, his trial testimony regarding his neck and back pain was clearly not perjurious.

Tracy also contends that Undersheriff Haus perjured himself at trial, and that appellate counsel wrongfully failed to raise this issue on appeal.  Supporting Mem. at 44-45.  In support of this claim, petitioner notes that at the preliminary hearing, Undersheriff Haus declared that his role in the criminal investigation involved general supervision and oversight, as well as fingerprint analysis.  <u>See</u> Supporting Mem. at 44 (citing <u>Coram</u> <u>Nobis</u> Application at M-29).  At the

suppression hearing, that witness also stated that he had performed a chemical field test on the marijuana found on Tracy's person at the hospital.  <u>See</u> Transcript of Suppression Hearing (8/21/00) at 27.  Petitioner argues that such witness's failure to refer to the field test he performed on the marijuana during his testimony at the preliminary hearing establishes that such witness provided "material[ly] inconsistent testimony."  Supporting Mem. at 44.  This argument is specious; the witness did not testify at the preliminary hearing that he did <u>not</u> perform any field tests, he merely did not volunteer such additional information at that hearing.

A witness testifying under oath commits perjury where he "gives false testimony concerning a material matter **with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory**."  <u>United States v. Dunnigan</u>, 507 U.S. 87, 94 (1993) (emphasis added); <u>see also</u> <u>Weichert v. United States</u>, 458 F.Supp 2d 57, 65-66 (N.D.N.Y. 2006) (Hurd, J.) (quoting <u>Dunnigan</u>), <u>aff'd</u>, <u>Weichert v. United States</u>, No. 06-5225-cv (2d Cir. Apr. 22, 2008).  Because there is no evidence that any prosecution witness committed perjury at Tracy's trial, appellate counsel cannot be found to have rendered ineffective assistance by failing to assert that argument on appeal.

Since nothing before the Court suggests that appellate counsel's performance was objectively unreasonable, petitioner has wholly failed to establish that the Third Department's decision denying Tracy's <u>Coram</u> <u>Nobis</u> Application, <u>see</u> <u>Tracy</u>, No. 15173 at 1, is either contrary to, or represents an unreasonable application of, the above-cited Supreme Court precedent.  Therefore, the Court denies his first ground for relief.

**B.      <u>Prosecutorial Misconduct / Brady Violations</u>**

In his third ground for relief,[11] Tracy assets that he is entitled to a new trial due to prosecutorial misconduct that occurred in the related criminal matter, which included the improper withholding of Brady material by the District Attorney.  See Petition, Ground Three.  Certain of these claims were asserted by Tracy in his direct appeal, while the remaining arguments were raised by him in his CPL Motion.  See App. Br.; CPL Motion.  The state courts denied all of those claims.  See Tracy, 299 A.D.2d 659; November, 2002 Order.  This Court must therefore ascertain whether those decisions are either contrary to, or represent an unreasonable application of, Brady and its progeny.

### i.      Clearly Established Supreme Court Precedent

In Brady, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady, 373 U.S. at 87.  To prove a Brady violation, a habeas petitioner must establish that:  1) the evidence at issue was favorable to the accused, either because it was exculpatory or could have impeached a prosecution witness; 2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and 3) prejudice ensued from the withholding.  Moore v. Illinois, 408 U.S. 786, 794-95 (1972); see also Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

### ii.      Contrary to, or Represents an Unreasonable Application of, Clearly Established Supreme Court Precedent

In support of this aspect of his petition, Tracy asserts that the prosecutor withheld from the defense the past criminal history of Ruggles, which petitioner asserts included "controlled substance

---

[11]      As is discussed more fully ante, this Court has determined that Tracy is procedurally barred from obtaining the relief he seeks in his second ground.

violations." Supporting Mem. at 49. He continues by arguing that such witness received "favorable treatment ... concerning ... pending criminal charges in exchange for his cooperation and courtroom testimonies [sic]." Id. Petitioner argues that the prosecution's wrongful failure to turn that information over to the defense prevented his trial counsel from effectively cross-examining that witness. Tracy also claims that the prosecution's belated disclosure of the full report generated by Pierce after he subjected the substances to chemical testing violated Tracy's rights under Brady / Rosario. Supporting Mem. at 51-52.

With respect to Ruggles, the Court notes that in denying this aspect of Tracy's CPL Motion, the County Court noted that the affidavit he included in support of such claim was not signed by Tracy, and that the criminal history that he ascribes to Ruggles was "completely unsubstantiated." See November, 2002 Order at 2 & n.1. To prevail on a Brady claim, a party must initially establish that the evidence sought, in fact, existed. Graham v. Ricks, No. 9:02-CV-0303, 2004 WL 768579, *5 (N.D.N.Y. Apr.7, 2004) (McCurn, S.J.) (citations omitted), appeal dismissed, Graham v. Ricks, No. 04-2650 (2d Cir. Dec. 20, 2004). Since there is no evidence that substantiates Tracy's allegations about Ruggles' purported criminal history, he has failed to meet his burden of proof as to this claim. Tracy has similarly not established that the District Attorney had entered into any cooperation agreement with Ruggles in exchange for his trial testimony. E.g., Supporting Mem. at 48-40. Since there is no evidence establishing that the agreement which petitioner now claims the prosecutor wrongfully failed to disclose ever existed, this aspect of his Brady claim must similarly be denied.

Next, as to Tracy's claims regarding the purportedly untimely disclosure of the laboratory report, the Court notes that this claim was denied by the Third Department in the context of Tracy's

26

direct appeal.  See Tracy, 299 A.D.2d at 661.  In that decision, the Appellate Division found that Tracy was not prejudiced by the delay in providing the defense with the report because "defense counsel was afforded more than a day to review the materials before Pierce was called as a witness," and defense counsel did not make any application to that court for permission to retain an expert to review the reports.  Id.

     To establish that such report was "suppressed" by the prosecution, Tracy must demonstrate that his attorney did not possess the evidence in time for its effective use at trial.  As Senior Judge Thomas J. McAvoy of this District has noted, "as long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner."  Lutes v. Ricks, 02-CV-1043, 2005 WL 2180467, at *15 n.19 (N.D.N.Y. Sept. 9, 2005) (internal quotation and citations omitted).  Tracy has not offered any evidence that suggests that the Third Department erred when it found that Tracy's counsel was afforded more than a day to review the report before Pierce was called as a witness. Since there is no record evidence that counsel needed additional time to review the report before he could effectively cross-examine that witness concerning the contents of that report, petitioner has failed to establish that the report was "suppressed" in a Brady sense.

     In sum, Tracy has not established that the decisions of the state courts denying his Brady claims are either contrary to, or represent an unreasonable application of, Brady and its progeny.[12]

---

[12]     Because alleged Rosario violations are grounded in state law, federal district courts have uniformly held that a claimed Rosario violation cannot form a basis for federal habeas review.  See Randolph v. Warden, Clinton Correctional Facility, No. 04 CIV. 6126, 2005 WL 2861606, at *5 (S.D.N.Y. Nov. 1, 2005) ("the failure to turn over Rosario material is not a basis for habeas relief as the Rosario rule is purely one of state law"); Martinez v. Walker, 380 F.Supp.2d 179, 186 n.5 (W.D.N.Y. 2005) (Rosario claim "does not present an error of constitutional magnitude and therefore is not cognizable on habeas review).

This Court therefore denies his third ground for relief.

### C.     Miranda Violations

Tracy next argues that his Miranda rights were violated in the related criminal proceeding. See Petition, Ground Four.  In support of this assertion, he claims that:  i) he was never advised of his Miranda rights by law enforcement agents; ii) after he was detained by the police, he nevertheless requested that an attorney be present before any questioning; iii) notwithstanding that request, he was questioned by law enforcement officers without the benefit of an attorney; and iv) at the time of that improper questioning, Tracy was incapacitated due to the drugs that had been administered to him because of the pain from which he was suffering.  Supporting Mem. at 53-55.

### i.     Clearly Established Supreme Court Precedent

Under Miranda, "a person questioned by law enforcement officers after being 'taken into custody or otherwise deprived of his freedom of action in any significant way' must first 'be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.'"  Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444).  In considering whether a party has voluntarily provided a statement to the police, courts are to consider the "totality of the circumstances," including evidence of police coercion, the length of the interrogation, the defendant's maturity and education, and whether the police failed to advise the defendant of his rights to both remain silent and have counsel present during the custodial interrogation.  Withrow v. Williams, 507 U.S. 680, 693-94 (1993); see also Colorado v. Spring, 479 U.S. 564, 573 (1987).[13]  In

---

[13]     A coerced or otherwise involuntary statement may never be used for any purpose: "any criminal trial use against a defendant of his involuntary statement is a denial of due process of law...."  Mincey v. Arizona, 437 U.S. 385, 398 (1978) (emphasis in original).

determining whether a statement was coerced, a court must "examine[] 'whether a defendant's will

was overborne' by the circumstances surrounding the giving of a confession[,] ... tak[ing] into

consideration 'the totality of all the surrounding circumstances – both the characteristics of the

accused and the details of the interrogation.'"  Dickerson v. United States, 530 U.S. 428, 434

(quoting Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)).  "Any statement given freely and

voluntarily without any compelling influences is, of course, admissible in evidence."  Miranda, 384

U.S. at 478.

### ii.    Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent

In support of his claim that the police violated his Miranda rights, Tracy alleges that "[a]ny

statements Tracy ... made while undergoing emergency medical care were made AFTER he

requested a lawyer."  Supporting Mem. at 52 (emphasis in original); see also Supporting Mem. at

54.  He further claims that because he was too intoxicated from the drugs that he was given for his

pain, the statements he made to law enforcement personnel, including those that were used to

support the search warrant application and that were introduced against Tracy at his trial, should

have been suppressed by the County Court.

These claims were raised by Tracy in his coram nobis application, in which he additionally

alleged that appellate counsel wrongfully failed to raise a Miranda claim on appeal.  See Coram

Nobis Application at 48-50.  This Court must therefore ascertain whether the Third Department's

decision denying that claim, see Tracy, No. 15173, slip op. at 1, is either contrary to, or represents

an unreasonable application of, the above-referenced Supreme Court precedent.

As is discussed more fully below in conjunction with his final claim seeking habeas relief,

this Court concurs with the Third Department's determination that Tracy was placed under arrest before the illegal substances were discovered on Tracy's person.  Tracy, 299 A.D.2d at 660-61. Thus, statements that he made to law enforcement agents after that time would generally be inadmissable against him at trial if he was not advised of his rights, because under Miranda, police must advise individuals of those rights once a suspect has been placed "in custody" and the police thereafter seek to question him.  Thompson v. Keohane, 516 U.S. 99, 102 (1995).

Although the evidence establishes that Tracy was not advised of his Miranda rights before he uttered the incriminating statements that were admitted into evidence, see Trial Tr. at 109, 214, the Court notes that spontaneous oral admissions that are blurted out by an individual may properly be admitted into evidence notwithstanding Miranda because such admissions are not properly viewed as the product of a custodial interrogation.  See Marshall v. Artus, No. CIV. 9:04CV881, 2007 WL 2406958, at *6 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J.) ("Where the suspect's statements are volunteered and not made in response to express questioning or its functional equivalent, the Miranda protections are not implicated") (citations omitted); Allen v. Filion, 371 F.Supp.2d 284, 287-88 (W.D.N.Y. 2004) (citing Miranda); Fox v. Dalsheim, No. CV-87-0298, 1987 WL 20322, at * 4 (E.D.N.Y. Nov. 9, 1987) (citing Miranda).  At trial, the evidence established that Tracy's admissions were blurted out voluntarily, and not in response to any questions posed to him by any officers.  See Trial Tr. at 211-14.  Thus, those incriminating statements could properly be received into evidence notwithstanding the fact that Tracy had not yet been advised of his Miranda rights.

Furthermore, Tracy has not provided any evidence that supports his current claim that he was intoxicated due to the drugs that had been administered to him at the time of his admissions. Significantly, defense counsel did not elicit any testimony during his cross-examination of

30

Undersheriff Haus, Deputy Freshwater or the nurse who treated Tracy that substantiates his current claim of intoxication.  Therefore, he has failed to sustain his burden of proof as to this claim.

Based upon the foregoing, this Court concludes that the Appellate Division's decision denying this claim, see Tracy, No. 15173, slip op. at 1, is neither contrary to, nor represents an unreasonable application of, the clearly established Supreme Court precedent noted above.  The Court therefore denies Tracy's fourth ground for relief.

### 5.    Trial Court Error

In his fifth ground, petitioner asserts that he is entitled to a new trial due to errors committed by the County Court during the course of the criminal matter below.  See Petition, Ground Five. Specifically, he claims that the trial court improperly:  i) allowed the jury to learn that he was the subject of a federal arrest warrant; ii) permitted Pierce to testify on behalf of the prosecution; iii) failed to dismiss the criminal impersonation charge; and iv) wrongfully failed to grant Tracy's CPL § 330.30 motion.  Id.

The Third Department found Tracy's claims challenging these determinations of the trial court to be without merit.  Tracy, 299 A.D.2d at 661.  This Court therefore considers whether these claimed errors had a substantial and injurious effect or influence in determining the jury's verdict. E.g., Rice v. Senkowski, No. 04-CV-335, 2007 WL 2789504, at *7 (N.D.N.Y. Sept. 24, 2007) (Kahn, J) (discussing standard of review to be utilized in analyzing habeas claims where appellate court found that trial court did not commit any error); see also Warren v. Ercole, No. 07 CV 3175, 2007 WL 4224642, at *8 (E.D.N.Y. Nov. 27, 2007).

As to evidence of the federal arrest warrant relating to Tracy, because defense counsel stipulated to the admission of that evidence, see Pretrial Hearing (10/10/00) at 10-11, the trial court

did not err in allowing evidence of the warrant to be heard by the jury.  Next, this Court concurs

with the Third Department that the County Court properly allowed Pierce to testify at trial because

the record establishes that defense counsel was afforded sufficient time to review that witness's

notes before he testified at trial.  E.g., Tracy, 299 A.D.2d at 661.  As to petitioner's claim regarding

dismissal of the criminal impersonation charge, this Court notes that:  i) the Superceding Indictment

charged Tracy with criminally impersonating "another individual;" (see Superceding Indictment); ii)

the testimony established that Tracy informed Deputy Freshwater that Tracy was Seth Ruggles,

Tracy's roommate (Trial Tr. at 49); and iii) Seth Ruggles testified that he never authorized Tracy to

use Ruggles' name (Trial Tr. at 169).  Because the prosecutor established the elements necessary to

prove the criminal impersonation charge, see N.Y. Penal L. § 190.25(1), the County Court did not

err in denying defense counsel's request to dismiss that charge.  Finally, as to Tracy's claim that the

County Court erred in failing to grant his CPL § 330.30 motion, this Court notes that this portion of

his petition neglects to acknowledge the fact that federal habeas relief is not available to redress

errors the purportedly occurred in state post-conviction proceedings.  Welch v. Artus, No.

04-CV-205S, 2007 WL 949652, at *55 (W.D.N.Y. Mar. 29, 2007) (citing Jones v. Duncan, 162

F.Supp.2d 204, 217-19  (S.D.N.Y. 2001)) (other citation omitted).

Although the Second Circuit does not appear to have explicitly ruled on this issue in a

published decision, district court decisions within this circuit have routinely denied applications for

habeas relief for this reason.  See, e.g., Page v. Mantello, No. 98-CV-1916 (N.D.N.Y. Dec. 4, 2002),

slip op. at 41-42 (Peebles, M.J.), adopted, Page v. Mantello, No. 98-CV-1916 (N.D.N.Y. Apr. 16,

2003), appeal dismissed, Page v. Mantello, No. 03-2342 (2d Cir. June 1, 2004); see also Jones, 162

F.Supp.2d at 219 (petitioner's "assertion that the failure to hold a hearing on his CPL §§ 440.10 and

330.30 ... motions violated due process is not cognizable on federal habeas review"); Sparman v.

Edwards, 26 F.Supp.2d 450, 468 n.13 (E.D.N.Y. 1997), aff'd, 154 F.3d 51 (2d Cir. 1998). Thus, any

alleged error on the part of Judge Sherman in denying Tracy's CPL § 330.30 motion cannot form the

basis for him to obtain federal habeas relief.

In light of the foregoing, this Court concludes that Tracy has not demonstrated that any of

the claimed errors committed by the County Court had a substantial or injurious effect or influence

in determining the jury's verdict. The Court therefore denies Tracy's fifth ground for relief.

### 6.    Prosecutorial Misconduct

In his final ground in support of his request for federal habeas intervention, Tracy argues that

the prosecutor engaged in misconduct in the criminal matter below. Petition, Ground Six. In

support of this claim, Tracy asserts that the prosecutor:  i) used perjured testimony at trial; ii) failed

to perform a proper investigation relating to the tape recording that was made at the preliminary

hearing; iii) committed Brady violations; iv) used false evidence at trial; and v) destroyed material

evidence that was used to convict Tracy. Id. These claims were raised by Tracy in state court in his

coram nobis application, see Coram Nobis Application at 22-48, and subsequently denied by the

Third Department. Tracy, No. 15173, slip op. at 1.

### i.    Clearly Established Supreme Court Precedent

A criminal defendant's right to a fair trial is mandated by the Due Process Clause of the

United States Constitution. Albright v. Oliver, 510 U.S. 266, 273 n.6 (1994) (citing United States v.

Agurs, 427 U.S. 97, 107 (1976)).[14]  For habeas relief to be granted based on a claim of prosecutorial

---

[14]    "A right to a fair trial is a right ... protected by the due process clause of
the Fourteenth Amendment." Adamson v. People of State of California, 332 U.S. 46, 53 (1947)
(footnote omitted).

misconduct, however, the alleged misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)).  In considering such a claim, courts are to focus on "the fairness of the trial, not the culpability of the prosecutor."  <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982).

><b>ii.     Contrary To, or Unreasonable Application of, Clearly Established Supreme Court Precedent</b>

Tracy's claim that the District Attorney suborned perjurious testimony is without substance for the reasons discussed above in conjunction with Tracy's first ground for relief.  Therefore, this aspect of his claim is without merit.

This Court similarly finds that Tracy's claims regarding the prosecution's failure to provide the defense with a copy of the audiotape made at the preliminary hearing is without merit.  As noted above, the only proof before this Court establishes that the prosecutor was incorrectly informed by the Village Court that such court was not in possession of the tape, but that once it was discovered, the defense promptly received a copy of the tape.  Dkt. No. 21-2 at 11-12.  The actions of the District Attorney relating to that tape can in no way be properly categorized as "misconduct."

Next, petitioner's <u>Brady</u> claim necessarily fails because, as noted above, defense counsel was afforded more than a day to review the laboratory report before Pierce was called as a prosecution witness, and the record is void of any evidence that establishes that counsel needed additional time to review that report before he could effectively cross-examine Pierce on the contents of that document.[15]

---

[15]     To the extent Tracy argues that the prosecution failed to provide the defense with <u>Brady</u> material relating to witness Ruggles' criminal history, <u>see</u> Supporting Mem. at 75-76, the

Considering next petitioner's claim that the prosecutor used "false evidence" to convict Tracy, this argument is based upon his claim that he was not placed under arrest until after he was discharged by the hospital.  However, the Appellate Division found that Tracy was placed under arrest before the drug evidence fell from Tracy's person in the hospital room.  Tracy, 299 A.D.2d at 660-61.  The issue of when an individual was placed under arrest is a factual finding that is entitled to AEDPA deference.  E.g., Huntley v. Superintendent, Supt. of Southport Corr. Facility, No. 9:00CV191, 2007 WL 319846, at *11 (N.D.N.Y. Jan. 30, 2007) (Hurd, J. adopting Report-Recommendation of Magistrate Judge George H. Lowe); Davis v. Johnson, 258 F.Supp.2d 93, 100-01 (E.D.N.Y. 2003).  Although Tracy now claims that he has discovered documents which he asserts supports his current argument that was not arrested until he was discharged from the hospital, he has not provided this Court with clear and convincing evidence which establishes that the Third Department's conclusion regarding the time of Tracy's arrest is erroneous.  E.g., Majid v. Portuondo, 428 F.3d 112, 125 (2d Cir. 2005) ("in habeas proceedings, 'a determination of a factual issue made by a State court shall be presumed to be correct' and the petitioner 'shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'" (quoting 28 U.S.C. § 2254(e)(1)).

Finally, Tracy's claim that the prosecutor destroyed material evidence used to convict him relates to the fact that both the pants Tracy was wearing at the time he was found to be unlawfully in possession of the narcotics, as well as the piece of paper on which the LSD was found, were apparently unavailable to the defense at the time of trial.  E.g. Supporting Mem. at 76-77.

--------

Court reiterates its earlier determination that there is no evidence that such Brady material – a criminal record relating to Ruggles – ever existed.

As to the pair of pants that Tracy was wearing when he was arrested, the Court notes that neither nurse Best nor Deputy Sheriff O'Dell were questioned at trial as to where the pants were placed after they were removed from Tracy's body.  Thus, there does not appear to be any record evidence which establishes precisely what occurred with the pants after those witnesses observed the narcotics fall from them while he was in the hospital.  As to the paper on which the LSD was found, although defense counsel did not ask Pierce during cross-examination why none of the paper which contained the LSD remained after it was tested by Pierce, it appears as though the testing of that substance may have consumed that evidence.  See Trial Tr. at 241-49.  Nevertheless, no evidence suggests any misconduct on the part of officials regarding the manner in which they handled that incriminating evidence.

"[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."  Arizona v. Youngblood, 488 U.S. 51, 58 (1988); Edmonds v. McGinnis, 11 F.Supp.2d 427, 436  (S.D.N.Y. 1998) (citing Youngblood).  Additionally, "where extraordinary relief by writ of habeas corpus is sought, evidence of actual tampering is necessary."  Alfano v. United States, 555 F.2d 1128, 1129 n.2 (2d Cir. 1977); Ramos v. Costello, No. 96 CIV. 3659, 1997 WL 231129, at *5 (S.D.N.Y. May 7, 1997) (quoting Alfano).  Tracy has not established that the failure to preserve for the use at trial either the pants that Tracy was wearing, or the paper on which the LSD was found, was the product of bad faith or other misconduct.  He has therefore failed to establish that he is entitled to habeas relief concerning this final aspect of his claim alleging prosecutorial misconduct.

Since Tracy has not established that the Third Department's decision denying this aspect of Tracy's coram nobis application, see Tracy, No. 15173, slip op. at 1, is either contrary to, or

36

represents an unreasonable application of, the above-cited Supreme Court precedent, this final claim

seeking federal habeas intervention must be denied.

## III.    **Certificate of Appealability**

Finally, the undersigned notes that 28 U.S.C. § 2253(c)(1) provides in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an
> appeal may not be taken to the court of appeals from –
>
> > (A) the final order in a habeas corpus proceeding in
> > which the detention complained of arises out of
> > process issued by a State court ....[16]

A Certificate of Appealability may only be issued "if the applicant has made a substantial

showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2).  Since petitioner has

failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in

this matter.

**WHEREFORE**, after having reviewed the state court record, the documents submitted by

the parties in conjunction with this action, the applicable law, and for the reasons discussed herein,

it is hereby

**ORDERED**, that Tracy's habeas petition (Dkt. No. 1) is **DENIED** and **DISMISSED**, and it

is further

**ORDERED**, that the Clerk of Court serve a copy of this Memorandum-Decision and Order

upon the parties to this action by regular or electronic mail, and it is further

**ORDERED**, that any state court records that were not filed in this action be returned

---

[16]      Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal
may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of
appealability under 28 U.S.C. § 2253(c)." See Fed.R.App.P. 22(b).

directly to the Attorney General at the conclusion of these proceedings (including any appeal of this

Memorandum-Decision and Order filed by any party).

**IT IS SO ORDERED.**

Dated:         June 1, 2008
               Syracuse, New York


_____
Neal P. McCurn
Senior  U.S. District Judge

38